IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS PAYTON (#R-10454),

        Plaintiff,

    v.

CHRIS CANNON, *et al.*,

        Defendants.

Case No. 11 C 5955

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Tobias Payton (hereinafter, "Payton" or "Plaintiff"), an inmate at the Stateville Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Payton contends that Defendants Chris Cannon, the former Publications Review Chairman at Stateville; Colleen Franklin, a correctional counselor; Marcus Hardy, the former warden of Stateville; Kevin Frain, the present Publications Review Chairman; Mary Berry, Records Office Supervisor at Stateville; Patricia Weghorn, a mail room worker at Stateville; and Salvador Godinez, the Director of the Illinois Department of Corrections, (hereinafter, the "Defendants") violated his constitutional rights by wrongfully censoring his adult-themed mail, and by denying him a meaningful grievance procedure in violation of his rights to due process. This matter is before the Court for ruling on the Defendants'

Motion for Summary Judgment [ECF No. 79].  For the reasons stated in herein, the Motion for Summary Judgment is granted.

## I.  <u>LEGAL STANDARD</u>

### A.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove,* 468 F.3d 975, 988 (7th Cir. 2006).  In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Weber v. Universities Research Assoc., Inc.,* 621 F.3d 589, 592 (7th Cir. 2010).  The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter.  The only question is whether there is a genuine issue of fact."  *Gonzalez v. City of Elgin,* 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50 (1986).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex,* 477 U.S.

at 322.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Sarver v. Experian Information Solutions,* 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."  *Egonmwan v. Cook County Sheriff's Dept.,* 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 640-41 (7th Cir. 2008).

## B.  Local Rule 56.1 (N.D. Ill.)

Defendants filed Statements of Uncontested Material Facts pursuant to Local Rule 56.1 (N.D. Ill.).  Together with their Motion for Summary Judgment, Defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [ECF No. 82], as required by Local Rule 56.2.  That Notice clearly explained the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3)  a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any

disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

(B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor,* 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir. 2006); *see also, Koszola v. Bd. of Educ. of the City of Chicago,* 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.,* 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, Plaintiff failed to file a response to Defendants' statements of uncontested facts. A

motion for summary judgment "requires the responding party to come forward with the evidence that it has -- it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad,* 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). As Plaintiff has failed to do so, Defendants' proposed undisputed facts are deemed admitted. *See, Chelios v. Heavener,* 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B).

## II.  FACTS

Plaintiff, Tobias Payton, is an inmate in state custody who, at all times referenced in his Complaint, was incarcerated at Stateville Correctional Center ("Stateville"), a maximum security prison located in Joliet, Illinois. *See,* Def. St. of Fact ¶ 1. Plaintiff alleges a violation of 42 U.S.C. 1983, based upon an alleged denial of his First Amendment rights by confiscating certain adult-themed magazines and photographs. *See,* Def. St. of Fact ¶¶ 2 and 11.

The Defendants are:  Kevin Frain, who is the Publications Review Chairman at Stateville, and as such, reviews incoming publications to inmates and decides whether they are acceptable or contraband, *see,* Def. St. of Fact ¶ 3; Marcus Hardy, who was the Warden at Stateville from December 1, 2009 to December 31, 2012, and is currently the warden at Sheridan Correctional Center, *see,* Def. St. of Fact ¶ 4; Chris Cannon, who is the former Publications Review Chairman at Stateville, where he reviewed incoming

publications to inmates and decided whether they were acceptable or contraband, *see,* Def. St. of Fact ¶ 5; Colleen Franklin, who is presently a Correctional Counselor II at Stateville, and during the time period of the Complaint was a Grievance Officer ( the "G.O.") who reviewed inmate grievances, *see,* Def. St. of Fact ¶ 6; Patricia Weghorn, who was a mailroom employee at Stateville from June 1, 2011 to December 16, 2012, and is currently an Information-Technology Services Employee at Stateville, *see,* Def. St. of Fact ¶ 7; Mary Berry, who works in the Records Office at Stateville and has worked in the mailroom in the past for overtime pay when the mailroom was understaffed or high volume of inmate's personal mail needs to be shaken down, which is when personal mail is opened  and inspected for violations of all applicable Stateville Rules, *see,* Def. St. of Fact ¶ 8; and Salvador Godinez, who is the Director of the Illinois Department of Corrections, *see,* Def. St. of Fact ¶ 9.

The State of Illinois has put in place 20 Illinois Administrative Code 525.230, Procedure for Review of Publications, which addresses the procedure for prisons to follow in regulating, and controlling publications, which are ordered by inmates. *See,* Def. St. of Fact ¶ 12. Illinois Department of Corrections ("IDOC") implemented the requirements of the Illinois law in Administrative Directive 04.01.108, which requires prisons to assess and inspect all publications for contraband. *See,* Def. St. of Fact ¶ 13.

According to the policy, publications that appear to violate Administrative Code 525.230 are to be referred to the Publications Review Officer. *See,* Def. St. of Fact ¶ 14. Following the Publication Review Officer's review, publications are placed on the prison and IDOC Approved, Conditionally Approved, or Disapproved Publication List, respectively. *See,* Def. St. of Fact ¶ 15. Publications that meet certain criteria may be disapproved. *See,* Def. St. of Fact ¶ 16. Included in the criteria used by the Publications Review Officer to determine whether a publication should be disapproved are: publications that have been redacted, altered, or otherwise modified from the original published edition; publications which are obscene; publications that include sexually explicit material that by its nature or content poses a threat to security, good order of the facility, or discipline; and publications that are determined to be detrimental to security, good order of the facility, rehabilitation or discipline. *Id*. Publications that are disapproved are considered contraband and are disposed of. *See,* Def. St. of Fact ¶ 17.

The IDOC Publications Committee has compiled a list of Approved/Disapproved Publications. *See,* Def. St. of Fact ¶ 19. The Publications Committee categorizes magazines and printed material in conformance with AD 04.01.108. *See*, Def. St. of Fact ¶ 20. An inmate who disagrees with the findings of the

- 7 -

publications review may file a grievance concerning the decision. *See,* Def. St. of Fact ¶ 18.

On March 20, 2007, Terry L. McCann, as Warden of Stateville, established in Warden's Bulletin 2007-44 a list of thirty-six items that would be considered contraband and would not be allowed through the Stateville mail room, including "nude pictures." *See,* Def. St. of Fact ¶ 21. The banned item "nude pictures" was amended in Warden's Bulletin 2011-93 to be "nude photos or prints" to reflect how Warden's Bulletin No. 2007-44 had been enforced under Warden Hardy. *Id.* Warden Hardy has observed that in the maximum security correctional setting, such as Stateville, the general population of inmates is more aggressive. *See,* Def. St. of Fact ¶ 22. Hardy has also observed that publications and photographs that depict nudity make prisons less safe by: (1) increasing black-market trading and exchange of contraband; (2) increasing physical safety issues between inmates and negatively affecting inmate relationships; and (3) increasing harassment of female employees working at the maximum security facilities. *See,* Def. St. of Fact ¶ 23. While Warden of Stateville, Defendant Hardy observed that the sheer volume of incoming mail through the mail room made screening all contraband impossible, and he was unable to implement any policy besides a complete ban on nude publications, nude photographs, and nude prints. *See,* Def. St. of Fact ¶ 24.

Plaintiff subscribed to a number of magazines that were either withheld from the Plaintiff by the prison Publication Review Officer from January 2011 to the present or confiscated from his cell by Correctional Officers. *See,* Def. St. of Fact ¶ 25. These magazines included nude photographs/pictures of women and photographs/pictures depicting sexual acts. *See,* Def. St. of Fact ¶ 26.

Plaintiff was informed that these magazines were withheld because they violated the prison's regulations concerning incoming prisoner publications. *See,* Def. St. of Fact ¶ 27. On January 28, 2011, Plaintiff's February edition of "Black Tail" magazine was confiscated for being on the disapproved list. *See,* Def. St. of Fact ¶ 28. On January 31, 2011, Plaintiff wrote a grievance about Defendant Cannon's denial of "Black Tail" magazine. *See,* Def. St. of Fact ¶ 29. On February 16, 2011, Counselor Johnson responded to the January 31, 2011, grievance, informing Plaintiff (1) all issues of "Black Tail" were unauthorized, (2) Plaintiff could write to the publication company, and (3) Plaintiff could terminate his subscription. *See,* Def. St. of Fact ¶ 30.

On February 28, 2011, Plaintiff's April edition of "Black Tail" magazine was confiscated for being on the disapproved list. *See,* Def. St. of Fact ¶ 31. On March 1, 2011, Plaintiff wrote a grievance that his "Black Tail" magazine was denied by Defendant and former Publication Review Officer Cannon, for being on the

disapproved list.  *See,* Def. St. of Fact ¶ 32.  On March 2, 2011, Counselor Johnson responded to Plaintiff's grievance that "Black Tail" magazine is on the banned list.  *Id*.  On March 7, 2011, G.O. Colleen Franklin denied Plaintiffs March 1, 2011 Grievance. *See,* Def. St. of Fact ¶ 33.  Warden Hardy's Office concurred on March 9, 2011.  *Id*.  On May 31, 2011, Gina Allen from the Administrative Review Board (the "ARB") concurred with Stateville staff that the March 01, 2011, grievance should be denied.  *See,* Def. St. of Fact ¶ 41.

On March 7 and March 11, 2011, the following publications, all of which were on the banned list, were confiscated:  "40 Something," "18," "Bootylicious," two "Buttman," two "Players Nasty," two "Players Cream of the Crop," "Black Video Illustrated," and "Adam Black Film and Video Directory" magazines.  *See,* Def. St. of Fact ¶ 34.  On March 12, 2011, Plaintiff wrote a grievance about the confiscation of "40 Something," "18," "Bootylicious," two "Buttman," two "Players Nasty," two "Players Cream of the Crop," "Black Video Illustrated," and "Adam Black Film and Video Directory" magazines.  *Id*.  On April 4, 2011, Counselor Johnson responded that the publications were on the banned list.  *Id*.

On April 4 and 5, 2011, the following publications, all of which were on the banned list, were confiscated:  "Black Tail," "Bootylicious," "Naughty Neighbors," and "40/50 Something."  *See,* Def. St. of Fact ¶ 35.  On April 5, 2011, Plaintiff wrote a

grievance about these magazines and claimed he was going to file suit about these magazines, as well as "Black Tail," "PlayersCream of the Crop," "Black Video Illustrated," "Adam Black Film and Video Directory," "Adam Film WorldGuide Porn Stars," "Players Nasty," "40/50 Something," "Bootylicious," "Buttman," "Big Black Butt," and a second "Black Tail" magazine being confiscated between January and April 2011. *Id*. On April 9, 2011, Counselor Johnson responded to Plaintiff's grievance that the issues raised in his April 5, 2011, grievance had been previously addressed. *Id*.

On April 18, 2011, Defendant Chris Cannon confiscated seven "Black Tail" magazines and five copies of "Big Black Butt" magazine, as well as copies of "Black Leg," "Black Video Illustrated," "Players Nasty," "Players Girls Pictures," "Teenz," and "Pictorial." *See,* Def. St. of Fact ¶ 36. On April 18, 2001, Plaintiff filed a grievance regarding the confiscation of his seven "Black Tail" magazines and another grievance regarding the confiscation of his five "Big Black Butt" magazines. *See,* Def. St. of Fact ¶ 37. On April 19, 2011, Counselor Johnson responded to Plaintiff's grievances that she had spoken to Publication Review staff and "Black Tails" had been on the ban list for quite some time, "Big Black Butts" had been on the ban list for at least five years, Plaintiff was aware "Big Black Butts" was on the banned list, and suggested Plaintiff check the banned list before ordering any subscriptions. *Id*.

On April 20, 2011, Grievance Officer Colleen Franklin denied Plaintiff's January 31, 2011 and April 5, 2011 Grievances, finding (1) the publications were on the banned list, and (2) advising Plaintiff to be aware of Institutional Policy regarding publications, prior to ordering magazines in the future. *See,* Def. St. of Fact ¶ 38. Warden Hardy's Office concurred with Franklin's denials of both grievances on April 22, 2011. *Id.*

On April 21, 2011, Plaintiff wrote a grievance regarding the confiscation of "Black Leg, Vol. 12, # 7", "Black Video Illustrated, Vol. 8, #4", "Players Nasty Vol. 5, #7", "Players Girls Pictures, Vol. 8, #9" and Vol. 28, #7", "Teenz Vol. 9, #3, Vol. 8", "Pictorial, Vol. 28, #7." *See,* Def. St. of Fact ¶ 39. On April 25, 2011, Counselor Johnson responded to Plaintiff's April 21, 2011, grievance that the magazines were either on the banned list or contained photos that were not allowed. *Id.* On May 1, 2011, Defendant Colleen Franklin denied Plaintiff's April 21, 2011, grievance, relying on Counselor Johnson's April 25, 2011, review of the magazines deemed not allowed. Def. Ex. I, 05/01/2011 GO Report. Warden Hardy's Office concurred on May 5, 2011. *Id.* On August 16, 2011, Gina Allen from the ARB concurred with Stateville staff that the January 31, 2011, April 5, 2011, and April 21, 2011, grievances should be denied. *See,* Def. St. of Fact ¶ 44.

On June 26, 2011, Plaintiff had thirty-nine nude photos of girls confiscated by Stateville Correctional Officers. *See,* Def. St. of Fact ¶ 42. On June 29, 2011, Plaintiff wrote a grievance about the photographs being confiscated. *Id.* On June 30, 2011, Counselor Mansfield responded to the grievance, noting he had spoken to mailroom supervisor C. Banks who told him nude photos were not allowed as specified in Warden's Bulletin 2007-44. *Id.* On November 29, 2011, Gina Allen from the ARB found no further redress available for Plaintiffs June 29, 2011, grievance since there was no Grievance Officer's Report and the issue occurred back in June 2011. *See*, Def. St. of Fact ¶ 45.

On June 22, 2011, the following publications, all of which were on the banned list, were confiscated: "Super Black Starz," "Black Tail," and "Tight." *See,* Def. St. of Fact ¶ 43. On July 4, 2011, Plaintiff filed a grievance regarding these magazines being confiscated. *Id.* On July 5, 2011, Counselor Mansfield responded that all publications are subject to review to ensure the magazines are in compliance with IDOC Rules and Policies. *Id.*

On March 14, 2012, Anna McBee filed a Grievance Officers report that denied Plaintiff's March 12, 2011, and two April 18, 2011, grievances, finding the issues appropriately addressed by Counselor Johnson. *See,* Def. St. of Fact ¶ 46. Warden Hardy's Office concurred on March 15, 2012. *Id.* On March 26, 2012, Anna McBee filed a Grievance Officer's report that denied Plaintiff's

July 4, 2011, grievance, finding the issues appropriately addressed by Counselor Mansfield. *See,* Def. St. of Fact ¶ 47. Warden Hardy's Office concurred on March 28, 2012. *Id.* On November 27, 2012, Sherry Benton from the ARB concurred with Stateville staff that the March 12, 2011, two April 18, 2011, and July 4, 2011, grievances should be denied in accordance with Illinois Department of Corrections Rules, and that Plaintiff should review the disapproved/banned list prior to ordering any materials. *See,* Def. St. of Fact ¶ 48.

Each of the publications described herein was disapproved after a review by the Publications Review Officer determined that they were in violation of the publications directive. *See,* Def. St. of Fact ¶ 49. Plaintiff has access to order and subscribe to a number of other magazines that are not banned or disapproved. *See,* Def. St. of Fact ¶ 50. Plaintiff testified in his deposition that he has either ordered or subscribed to:

1. Muscle and Fitness Magazine, a work-out magazine;
2. Men's Health, a fitness s magazine with advice on women and nutrition;
3. Ebony Magazine, an entertainment magazine on African American movies and culture;
4. Jet Magazine, a smaller version of Ebony magazine;
5. Redbook Magazine, a fashion magazine for women;
6. Wine Enthusiast, a magazine that gives reviews and tips on wine consumption;
7. Smart Money, an investment magazine; and
8. Forbes, an investment magazine.

*See,* Def. St. of Fact ¶ 51.

Plaintiff testified in his deposition that he receives numerous magazines that mainly feature non-nude but female model pictorials in bathing suits or lingerie that includes:

1. Sex Appeal Magazine, which is about 100 pages of mainly Latino model women;
2. Straight Stunners Magazine, which is about 300 pages per issue of mainly African-American women models who are non-nude but in bathing suits or otherwise scantily clad;
3. Stunning Magazine, which is about 60 pages of non-nude but scantily clad women;
4. Gorgeous Magazine, which is about 80 pages of non-nude but scantily clad women;
5. Black Man Magazine, which is about 110-120 pages mainly with pictorials of non-nude women but also with articles;
6. Sweets Magazine, which is about 120 pages of non-nude pictorials with some articles;
7. Smooth Magazine, which is a magazine of pictorials; and
8. Smooth Girl Magazine, which is a magazine mainly of pictorials.

*See* Def. St. of Fact ¶ 52.

### III. DISCUSSION

#### A. Free Speech (First Amendment)

The First Amendment "embraces the right to distribute literature and necessarily protects the right to receive it." *Martin v. City of Struthers,* 319 U.S. 141, 143 (1943) (citation omitted). Moreover, "sexual expression which is indecent but not obscene is protected by the First Amendment." *Reno v. ACLU,* 521 U.S. 844, 854 (1997) (brackets and internal quotation marks omitted). Defendants do not argue that the materials at issue here are "obscene" within the meaning of *Miller v. California,* 413 U.S.

15 (1973), and so the Court assumes that they would be protected by the First Amendment outside the prison context.

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84 (1987) (citation omitted). That said, "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. N.C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977). "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration," *Turner,* 482 U.S. at 84 (quoting *Procunier v. Martinez,* 416 U.S. 396, 406 (1974)), and "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration," *Id.* at 89. The Supreme Court has thus "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott,* 490 U.S. 401, 408 (1989).

*Turner* set forth four factors to guide courts in fixing the correct balance between prisoners' constitutional rights and the

need for deference to prison administrators: "(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz,* 673 F.3d 630, 633 (7th Cir. 2012) (*citing Turner,* 482 U.S. at 89-91). The Supreme Court has held that "regulations affecting the sending of a 'publication' . . . to a prisoner must be analyzed under the *Turner* reasonableness standard. Such regulations are 'valid if [they are] reasonably related to legitimate penological interests.'" *Abbott*, 490 U.S. at 413 (*quoting Turner*, 482 U.S. at 89) (alteration in original); *see also, Munson*, 673 F.3d at 636 ("The challenged regulation survives if it bears a rational relation to legitimate penological interests."). "The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003).

The Seventh Circuit has held that "[p]risons have great latitude in limiting the reading material of prisoners." *Mays v. Springborn,* 575 F.3d 643, 649 (7th Cir. 2009). The Supreme Court and the Seventh Circuit have upheld prison restrictions on content that, outside the prison context, would be protected by the First

Amendment. *See, Abbott,* 490 U.S. at 403-04 (upholding against a facial challenge a prison regulation broadly authorizing officials "to reject incoming publications found to be detrimental to institutional security").

The Seventh Circuit has determined that a prison may constitutionally withhold obscene or sexually explicit magazines under 20 Ill. Admin. Code § 525.230. *Smith v. Donohue,* 1992 WL 238340, at *1 (7th Cir. Sept. 24, 1992). In *Smith,* the Seventh Circuit adopted the district court's application of the four *Turner* factors to determine the constitutionality of § 525.230. Applying the first factor, the court found that § 525.230 serves the legitimate and neutral objective of jail security: it is rational for [prison officials] to exclude materials that, although not necessarily likely to lead to violence, are determined by [prison officials] to create an intolerable risk of disorder under the conditions of a particular prison at a particular time. *Id.* at *5 (quoting *Thornburgh,* 490 U.S. at 417). Applying the second factor, the court found that under § 525.230, [i]nmates also have alternative means of exercising their First Amendment rights, by receiving publications not deemed inappropriate in the prison setting. *Id.* As for the final two *Turner* factors, the court stated that it was entitled to defer to prison officials' judgment that accommodating requests for sexually explicit material would jeopardize institutional interests. *Id.* at *6.

Although the magazines at issue in *Smith* were withheld for depictions of penetration, courts have held that regulations banning publications containing nudity are also constitutional. In *Amatel v. Reno,* 156 F.3d 192, 203 (D.C. Cir. 1998), the court upheld the constitutionality of the Ensign Amendment, which bars the use of Bureau of Prison funds to pay to distribute or make available to a prisoner any commercially published information or material that is sexually explicit or features nudity. 28 C.F.R. § 530C(b)(6). The court held that the prohibition on magazines containing nudity satisfied the four *Turner* factors because (1) there was a rational connection between barring nudity and providing a rehabilitative environment for inmates; (2) inmates remained able to access a broad range of material that did not contain nudity; (3) accommodating inmates' requests for publications containing nudity could threaten the safety of guards and other inmates; and (4) directing nudity to only those inmates whose rehabilitation would not likely be adversely affected would be administratively burdensome. *Amatel,* 156 F.3d at 196-202; *see also, Mauro v. Arpaio,* 188 F.3d 1054, 1063 (9th Cir. 1999) (applying the four *Turner* factors to uphold the constitutionality of a county jail policy barring "materials that show frontal nudity."); *Hawes v. Donahue,* 2006 WL 2925562, at *1 (N.D. Ind. Oct. 10, 2006) (upholding constitutionality of Indiana policy that prohibits inmates from receiving materials containing nudity).

Plaintiff has provided no evidence that his First Amendment rights were violated, or that the policy in place at Stateville is unreasonable under the *Turner* test. Plaintiff has further identified no evidence that individual issues of magazines, catalogs or photographs were not scrutinized before being placed on the prison's disapproved list, or being denied him. The evidence in the record before the Court establishes that each of the publications, catalogs and photographs denied Plaintiff by the Publications Review Officer was disapproved after a review determined that it was in violation of the publications directive. *See,* Def. St. of Fact ¶ 49. The evidence also establishes that Plaintiff has subscribed and can receive other publications that do not violate the prison policy, including the eight publications listed in Defendants' Statement of Facts ¶ 52.

The burden to show that a prison regulation is invalid falls on the inmate, not the prison. *See, Overton v. Bazzetta,* 539 U.S. 126, 132 (2003). Plaintiff has failed to satisfy his burden of demonstrating that the regulations at issue infringed his First Amendment rights. Accordingly, Defendants' Motion for Summary Judgment on the First Amendment claim is granted.

**B. Procedural Due Process (Fifth & Fourteenth Amendments)**

To the extent Plaintiff is also alleging a due process claim, his argument also fails. "Due process is a flexible concept, the import of which is to provide a meaningful opportunity to be

heard." *Casteneda v. Henman,* 914 F.2d 981, 985 (7th Cir. 1990).
In the context of withholding property from an inmate, due process
requires providing the inmate with a meaningful opportunity to be
heard on whether the property is contraband. *Stewart v. McGinnis,*
5 F.3d 1031, 1037 (7th Cir. 1993).

Plaintiff contends that he did not receive a meaningful review
of his publications, and that it was the individual prejudices of
the reviewers, and not process that led to denial of the materials.
However, Plaintiff does not dispute that the withheld publications,
catalogs and photographs contained nudity. Because the nature of
the publications is not disputed, Plaintiff cannot show that his
rights to due process were violated due to the individual reviewers
prejudices. Additionally, the undisputed evidence establishes
review of Plaintiff's grievances at every level, up to and
including the ARB. The record makes clear that Plaintiff was given
all the process he was due.

Accordingly, to the extent Plaintiff is asserting a claim for
violation of his right to due process, he has not identified
evidence supporting his assertion that his rights to procedural due
process were violated. As a result, Defendants are also entitled
to summary judgment on any due process claim.

## C. Retaliation

Plaintiff's final claim is that Defendants denied him
publications he had previously received in retaliation for him

utilizing the grievance process to complain about the denial of publications. To establish retaliation, an inmate must produce evidence that a protected activity was, "'at least a motivating factor' in retaliatory action taken against him, *i.e.,* action that would likely deter protected activity in the future." *Mays v. Springborn,* 719 F.3d 631, 635 (7th Cir. 2013) (*quoting Mays v. Springborn,* 575 F.3d 643, 650 (7th Cir. 2009)). That is, he must show three things: (1) that he engaged in constitutionally protected speech; (2) that he suffered a deprivation likely to deter future protected speech; and (3) that his protected speech was at least a motivating factor in the Defendants' actions. *See, Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012); *see also, Antoine v. Ramos,* 497 F. App'x 631, 633 (7th Cir. 2012) (*citing Kidwell v. Eisenhauer,* 679 F.3d 957, 965 (7th Cir. 2012)).

If the inmate satisfies these elements, the burden shifts to the defendants, who must rebut the causal inference with evidence showing that they would have taken the same action even without any retaliatory motive. *Mays,* 719 F.3d at 635; *Antoine,* 497 F. App'x at 633; *Mays,* 575 F.3d at 650. The Defendants cannot be found liable if they would have conducted the shakedown no matter what. *Antoine,* 497 F. App'x at 634. Thus, "[i]f the defendants produce evidence that they would have taken action against [Plaintiff] even in the absence of his speech, [Plaintiff] would also have to show that those reasons were pretextual." *Swearingen-El v. Cook Cnty.*

*Sheriff's Dep't,* 602 F.3d 852, 861 (7th Cir. 2010). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir. 2011); *see also, Valentino v. Vill. of S. Chi. Heights,* 575 F.3d 664, 670 (7th Cir. 2009) ("[T]he plaintiff may still reach trial by producing sufficient evidence to allow a reasonable fact finder to determine that the [defendant's] reasons were merely a pretext for [the adverse action], at least in part, for exercising her First Amendment rights.").

As previously discussed in the First Amendment free speech and due process contexts, Plaintiff failed to respond to Defendants' Motion for Summary Judgment, or Local Rule 56.1 Statement of Facts. Accordingly, there is no evidence in the record supporting any claim of retaliation. Thus, Plaintiff's retaliation claim fails, and Defendants are granted judgment.

## IV.   CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [ECF No. 79] is granted. The Clerk is directed to enter judgment in favor of Defendants pursuant to FED. R. CIV. P. 56. The case is terminated.

If Plaintiff wishes to appeal this final order, he may file a Notice of Appeal with this Court within thirty (30) days of the entry of judgment. FED. R. APP. P. 4(a)(4). A Motion for Leave to

Appeal *in Forma Pauperis* should set forth the issues Plaintiff plans to present on appeal. *See,* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections,* 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, he may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:12/30/2013